# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIE E. GREEN,** | ) | |
| **Plaintiff,** | ) | **No. 08 C 5143** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Geraldine Soat Brown** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie E. Green brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. 423 *et seq.* (the "Act"). (Compl.) [Dkt 1.] Plaintiff has filed a motion for summary judgment [dkt 20] and a supporting memorandum seeking an order reversing the Commissioner's final decision and entering a finding of disability and award of benefits or remanding for further administrative proceedings. ("Pl.'s Mem.") [Dkt 22.] The Commissioner has filed a brief opposing the motion ("Def.'s Mem.") [dkt 26], and Plaintiff has replied in further support of his motion. ("Pl.'s Reply.") [Dkt 27.] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 11.] The decision of this court therefore constitutes the final ruling on this matter. For the reasons set forth below, Plaintiff's motion is granted, and the case is remanded for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

Plaintiff first applied for benefits on April 10, 2006. (R. 110.) His claim was denied initially on June 15, 2006 and again upon reconsideration on August 23, 2006. (R. 71-74.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on January 10, 2008. (R. 6-70.) The ALJ issued a decision denying Plaintiff's request for benefits on February 26, 2008. (R. 75-85.) The Appeals Council declined Plaintiff's request for review on July 17, 2008 (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## BACKGROUND

Plaintiff was 55 years old at the time of the hearing before the ALJ. (R. 84.) He is single and has sole custody of his daughter who was then three years old. (R. 10.) He and his daughter live in a room that they rent from a family friend who owns a house in the Village of Dixmoor. (R. 10-11.) Plaintiff's highest level of education is a GED. (R. 12.) Though Plaintiff had not worked in the several months preceding the hearing, he had previously worked from 1995 through 2004 as a dishwasher, political fund-raiser, chemical mixer and forklift driver, and a laborer for the Village of Dixmoor. (R. 128, 166, 191, 200.) Before that, he suffered from an alcohol and drug addiction. (R. 191.) He testified during the hearing that his last full time work was in March 2004 for the Village of Dixmoor. (R. 12.) He also had done scrap metal recycling around that time. (R. 23-24.) At the time of the hearing, Plaintiff's most recent work had been self-employment doing landscaping in his

neighborhood. (R. 13.) With the exception of his self-employment, Plaintiff's past work is classified under the Social Security Regulations (the "Regulations") in the "medium" exertional category. (R. 56.)

**Medical History**

Plaintiff alleges that he became disabled on May 1, 2002. (R. 161.) He bases his claim of disability on his status following bone fusions in both wrists, a skin condition on his right hand and nerve damage in his left wrist from a dog bite. (R. 165.) He is right-handed. (R. 11.) He testified at the hearing about unpredictability in the functioning of his wrists and fingers, and pain flare-ups caused by certain movements or repeated usage of his wrists. (R. 32-33.)

While Plaintiff worked as a mixer and metal processor, from around 1996 to 2002, he had several work-related injuries to his hands and wrists. (R. 228-300.) He was treated repeatedly for wrist pain, and diagnosed as early as 1997 with osteoarthritis in his wrists. (R. 243, 337, 342.) He was also diagnosed with chronic eczema "likely related to handling of material from an irritant dermatitis" and referred to a dermatologist. (R. 249, 254.) This condition causes pitting in his hands as well as a tendency towards infection. (R. 221, 253-254, 256, 312.) In 2002, the dermatologist restricted Plaintiff's exposure to chemicals, and prescribed him antibiotics and pain medicine. (R. 313-317.) Although the surgery reports were not submitted, it appears from other records that Plaintiff underwent right wrist surgery in 1998 and left wrist surgery in 1999. (R. 241, 333-334, 343.)

Plaintiff submitted no medical records with his initial application for benefits, and he had no primary care physician at the time. (R. 163, 324-325.) At the request of the state agency, Plaintiff

3

was evaluated on May 31, 2006 by Dr. Stanley Rabinowitz of Midwest Medical Providers. (R. 304-307.) No medical records were available for Dr. Rabinowitz to review (R. 304), although records were ultimately submitted to the state agency. (R. 227-361.) Upon examination, Dr. Rabinowitz concluded that Plaintiff had bilateral wrist injuries with bilateral arthrodeses (or surgical joint immobilization), persistent wrist pain, a recent uncomplicated left wrist dog bite, and dermatitis greater on the right hand than the left. (R. 307.) He observed thickened areas of increased pigmentation and raised skin on the palmar surface of the right hand and to a lesser extent the left hand, although there was no sign of ulceration or infection. (*Id.*) Range of motion testing performed by Dr. Rabinowitz found that Plaintiff had 15 degrees dorsiflexion (upwards) and 5 degrees palmar flexion on both wrists. (R. 306.) Plaintiff's left hand tested normally for grip strength and digital dexterity, and Plaintiff's right hand tested at 70% grip strength and mildly impaired in digital dexterity. (R. 306.)

On June 8, 2006, Dr. Virgilio Pilapil, a state agency consultant, reviewed the medical records and completed a physical residual functional capacity assessment form regarding Plaintiff. (R. 318-325.) Dr. Pilapil opined, based on a review of the records then available, that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift or carry 25 pounds, stand and/or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, push and/or pull occasionally with both upper extremities, operate hand controls with his left hand with no limitation and operate hand controls with his right hand only frequently. (R. 318-319.) Dr. Pilapil noted Plaintiff was limited in his ability to perform gross manipulation (*i.e.*, handling) as well as fine manipulation (*i.e.*, fingering) based on Plaintiff's history of multiple wrist surgeries, decreased range of motion in both wrists and reduced grip strength in the right hand. (R. 321.)

4

Plaintiff began seeing Dr. Marshall James on October 4, 2006 and saw him several times over the next year. (R. 355-361.) Dr. James found that Plaintiff had a limited range of motion in both wrists and a scaly rash on his hands. (R. 360-361.) He referred Plaintiff to orthopedics as well as to dermatology for additional treatment. (*Id*.) Plaintiff underwent x-rays of his wrists in February 2007. (R. 353-354.) The x-ray report notes that Plaintiff had significant degenerative changes of the radial ulnar and carpal joints with joint space narrowing, subchondral sclerosis (or hardening of the tissue beneath the cartilage), subchondral cyst formation and fusion of the carpal bones. (R. 353-354.) In March 2007, Dr. James diagnosed Plaintiff with degenerative joint disease and prescribed pain medication for him. (R. 358.) On April 30, 2007, Dr. James further diagnosed Plaintiff with osteoarthritis in both wrists and prescribed pain medicine for him. (R. 356.) In August, 2007, Dr. James observed increased tenderness and decreased range of motion in Plaintiff's wrists and again prescribed pain medicine for him. (R. 355.)

On March 28, 2007, Dr. James completed an evaluation form regarding Plaintiff. (R. 349-352.) He diagnosed Plaintiff with severe osteoarthritis of both hands and wrists, right greater than left, referring to the x-rays demonstrating significant degenerative changes of many joints in the wrists and fusion of all carpal bones. (R. 349.) He concluded among other things that Plaintiff needed complete freedom to rest without restrictions, that he could sit for one hour on a sustained basis and stand/walk for two hours on a sustained basis, and although he could lift occasionally up to 10 pounds, he could not grasp or perform fine manipulation with either hand or perform pushing or pulling with the right hand. (R. 351-352.)

### Plaintiff's Testimony

Plaintiff testified at the hearing that he had lost one-third of the movement in both of his wrists and that he suffers from two types of wrist pain. (R. 32, 41.) He explained that his right wrist aches with pressure and burning inside, while his left wrists hurts with shooting pain, especially with certain movements. (R. 41.) He described his arthritis, bone fusions and silicone injections in each of his wrists. (R. 15.) Plaintiff testified that he suffered additional damage to his left wrist from a dog bite and that he had a bone removed in his right wrist where the ligament was too torn to hold it in place. (R. 15.) He wears prescription splints sometimes, but he prefers to wears ace bandages to help support his wrists. (R. 39-40.) He testified that his surgeon gave him a permanent weight restriction of 10 pounds and instructions not to engage in repetitive wrist tasks like lifting or bending. (R. 38.) He takes ibuprofen, blood pressure medication, and prescription pain medication as needed. (R. 43.) He is cautious with narcotic medicines because of his history of alcohol dependence. (R. 44-45.)

Plaintiff also testified that he has problems with his fingers. (R. 32.) He sometimes has problems turning a key or picking small items up. (R. 31-33.) He explained that there are things that he can do with one hand that he can not do with the other because his fingers "sometime . . . work, sometime . . . don't." (R. 32, 33.) He has dermatitis in both hands, which requires him to regularly soak his hands and scrape off dead skin. (R. 34-35.) His hands are pitted, and he applies Vaseline regularly to try to prevent cracking and infections. (R. 46.) He has not held full-time employment in several years, explaining that he fears further damage to his wrists and hands that either could not be repaired or that he could not afford to have repaired. (R. 36-39.)

Plaintiff rents a room in a home owned by a family friend. (R. 10-11.) He testified that the

homeowner performs most of the cleaning in the home but that he cares for his own personal needs including doing laundry and cooking for himself and his daughter and tidying up their room. (R. 16-18.) He testified that he can wash the dishes "with care" because he never knows if his wrists are going to give out or whether his pain will increase. (R. 17.) Although he takes out the garbage, he testified that he does not let it get too heavy. (R. 18.) According to Plaintiff, he is able to pour a gallon gasoline jug into a lawn mower and mow the lawn, although he must take breaks in order to rub his wrists when they ache. (R. 20, 36.)

Plaintiff further testified at the hearing that he does not have problems sitting for extended periods of time but that he has difficulty standing and walking for any length of time because he has a cracked bone in his thigh from an injury received in the Army. (R. 12, 28.) He is able to purchase groceries at a local store, but it is too far to walk so he usually gets a ride there from someone else who can do most of the lifting. (R. 19-20.)

### Vocational Expert's Testimony

Vocational Expert ("VE") Grace Gianforte reviewed Plaintiff's file and testified at the hearing. (R. 52-53.) She testified that Plaintiff's past work was primarily in the medium exertional category, although his work as a recyclable material collector was in the heavy exertional category. (R. 56.) Upon questioning by the ALJ, the VE testified that a person of Plaintiff's age, education and work experience who is able to lift up to 50 pounds occasionally, lift or carry up to 25 pounds frequently, frequently handle objects (gross manipulation) and frequently perform fingering (manipulation of items no smaller than a quarter) but who is required to avoid concentrated exposure to chemicals could not perform Plaintiff's past work with the exception of refuse and recyclable

material collector, but would be able to hold a number of other jobs. (R. 57) The VE further testified that if a person with the same abilities and restrictions were limited to occasionally handling objects and occasionally performing fingering, that person would not be able to perform work in the medium exertional category as "99 percent of occupations require more than occasional handling, finger, feeling, manipulation of objects." (R. 60.) Likewise, if the person were only able to lift or carry up to 20 pounds occasionally, lift or carry up to 10 pounds frequently in light work as defined by the Regulations, occasionally handle objects and occasionally perform fingering, that person would not be able to perform Plaintiff's past work. (R. 60-61.)

## DISABILITY DETERMINATION PROCESS

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The Regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the Regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if he has not performed any substantial gainful activity, whether the claimant has a severe impairment or combination of impairments; (3) if the claimant has a severe impairment, whether the claimant's impairment meets or equals any impairment listed in the Regulations as being so severe and of such duration as to preclude substantial gainful activity; (4) if the impairment does not meet or equal a listed impairment, whether the claimant retains the residual functional capacity ("RFC") to perform

his past relevant work; and (5) if the claimant cannot perform his past relevant work, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). An affirmative answer at steps one, two or four leads to the next step. *Zurawski*, 245 F.3d 886 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir. 1985)). An affirmative answer at steps three or five requires a finding of disability, whereas a negative answer at any step other than step three precludes a finding of disability. *Id*. The claimant bears the burden of proof at steps one to four, and if that burden is met, the burden at step five shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c); *Zurawski*, 245 F.3d 886.

When a claim for disability benefits cannot be evaluated based on medical considerations alone, the Commissioner may employ the Medical-Vocational Guidelines ("the Grid") to assist in assessing the claimant's ability to engage in substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Grid is a chart based on major functional and vocational patterns which works to classify a claimant as disabled or not disabled based on the claimant's age, education and work experience in combination with the individual's RFC. *Id*. The Commissioner's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (*e.g.*, sedentary, light, medium, heavy or very heavy work), in combination with an application of the Grid to determine whether an individual of the claimant's age, education, and work experience could engage in substantial gainful activity. *See id*. If the claimant's capabilities are not described accurately by a rule of the Grid, or are only described with borderline accuracy, the claimant's particular limitations must be considered. *Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983) (citing 20 C.F.R. Pt. 404, Subpt. P. App. 2. § 200.00 (a), (d) and 20 C.F.R. § 404.1563 (a)). The Grid is to

be applied only when it accurately describes the claimant's abilities and limitations. *Heckler*, 461 U.S. at 462 n.5.

## THE ALJ'S DECISION

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 1, 2002, Plaintiff's alleged disability onset date. (R. 80.) Although Plaintiff had reported earning some income in 2003 through 2005 the ALJ noted that it did not meet the substantial gainful activity threshold. (*Id.*) At step two, the ALJ concluded that Plaintiff had the severe impairments of "status bone fusion" of bilateral wrists and chronic dermatitis of bilateral hands. (*Id.*) He based this conclusion on Plaintiff's medical records showing chronic skin changes in both hands, his history of years of joint pain and trauma, and his wrist arthrodeses in 1998 and 2000. (R. 81.) The ALJ further noted evidence of Plaintiff's alcohol abuse disorder, finding that it is not a severe impairment because it is in remission. (R. 81.) At step three, the ALJ concluded that the Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) About this conclusion he said only that Plaintiff "does not manifest clinical signs and findings that meet the specific criteria of any of the Listings." (*Id.*) The ALJ did not list osteoarthritis among Plaintiff's severe impairments.

The ALJ concluded that Plaintiff has the RFC to perform medium work with the exception that he is limited to frequent fingering (defined as fine manipulation of items no smaller than the size of a paper clip) and frequent handling (defined as gross manipulation). (R. 81.) He added the further restriction that Plaintiff should avoid concentrated exposure to chemicals. (*Id.*) The ALJ concluded that the medical findings did not support any further limitations because the objective findings

"fail[ed] to provide strong support for the claimant's allegations of disabling symptoms and limitations." (R. 82.) To support his conclusion, the ALJ pointed to three records: a March 28, 2007 report from Plaintiff's treating physician Dr. Marshall James which he discredited as imposing restrictions that were "extreme and without substantial support from the other evidence of record;" the report of the consultative examination requested by the state agency and conducted on May 31, 2006 by Dr. Rabinowitz; and the physical residual functional capacity assessment form completed on June 8, 2006 by Dr. Pilapil. (R. 83.) He further noted that Plaintiff had testified about his ability to perform typical household duties, ride a bike, take out the trash and collect metal junk. (*Id.*) The ALJ opined that the "lifting limitation in the residual functional capacity and the restriction to frequent gross and fine manipulations accommodates [sic] these complaints," and concluded that "due to the lack of objective medical evidence, there [was] no basis for finding limitations greater than those determined in this decision." (*Id.*)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. 84.) The ALJ noted that Plaintiff had past relevant work as a dishwasher and chemical mixer, and that the VE had testified at the hearing that Plaintiff could no longer perform this work based on the limitation that he must avoid exposure to chemicals. (*Id.*) Turning to the Grid, the ALJ found that Plaintiff was 55 years old at the alleged disability onset date and thus an "individual of advanced age" according to the Regulations, that he had a least a high school education and the ability to communicate in English, and that transferability of job skills was not material to the determination because the Grid supported a finding that Plaintiff was not disabled regardless of any transferrable job skills. (R. 84.)

The ALJ continued, however, that although the Grid would direct a finding of not disabled

if the Plaintiff could perform the full range of medium work, the Plaintiff was further impeded by additional limitations. (*Id*.) He next turned to the VE's testimony that there were jobs in the national economy for an individual with Plaintiff's age, education, work experience and residual functional capacity. (R. 84-85.) Considering those factors, therefore, the ALJ then concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and was not disabled. (R. 85.)

## STANDARD OF REVIEW

The Social Security Act provides for limited judicial review of a final decision of the Commissioner. *See* 42 U.S.C. § 405(g). Where the Appeals Council declines a requested review of the ALJ's decision, it constitutes the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561-562 (7th Cir. 2009); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). While the ALJ's legal conclusions are reviewed *de novo*, his factual determinations are reviewed deferentially and are affirmed if they are supported by substantial evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Getch*, 539 F.3d at 480. Evidence is substantial if it is sufficient for a reasonable person to accept it as adequate to support the decision. *Craft*, 539 F.3d at 673. "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the decision lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When evaluating a disability claim, the ALJ must consider all relevant evidence and may not select and discuss only the evidence that favors his ultimate conclusion. *Murphy v. Astrue*, 496 F.3d 630, 634-635 (7th Cir. 2007); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Although the ALJ is not required to discuss every piece of evidence, the ALJ must provide an accurate and logical

bridge between the evidence and the conclusion, so that a reviewing court may assess the validity of the agency's ultimate findings, and afford the Plaintiff meaningful judicial review. *Craft*, 539 F.3d at 673 (internal quotations omitted). "If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded." *Villano*, 556 F.3d at 562.

## DISCUSSION

### A.   Plaintiff's RFC

Plaintiff argues that the ALJ failed to consider all relevant evidence in making his RFC determination because he did not consider Plaintiff's objective medical evidence of osteoarthritis in his wrists, the pain and swelling caused by this condition, and the effects of dermatitis on his hands. (Pl.'s Mem. at 8-11.) The Commissioner argues in response that the ALJ appropriately weighed the medical evidence, accounted for Plaintiff's dermatitis and supported his RFC finding with medical evidence and other evidence in the record. (Def.'s Mem. at 3-5.)

Determining a claimant's RFC is a legal decision reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). When determining a claimant's RFC, an ALJ applies a legal standard to the medical facts concerning a claimant's functional abilities. *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996). In determining what a claimant can do despite his limitations, the ALJ must consider the entire record, including all relevant medical and nonmedical evidence, as well as the claimant's own statements of what he is able or unable to do. 20 C.F.R. § 404.1545(a); SSR 96-8P, 1996 WL 374184 *5; *Craft*, 539 F.3d at 676. The ALJ is obliged to consider all of the claimant's medically determinable impairments of which the agency is aware, including medically determinable impairments that are not severe. *Id*.

The ALJ must articulate, at least minimally, his analysis of the evidence so that a reviewing court can follow his reasoning. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Herron*, 19 F.3d at 333. Further, Social Security Ruling ("SSR") 96-8p dictates that the "RFC assessment . . . include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities observations)." SSR 96-8p, 1996 WL 374184 *7.

In this case, the ALJ adopted the June 8, 2006 physical residual functional capacity assessment by Dr. Pilapil – that Plaintiff is limited to "frequent" handling and fingering (*see* R. 321) – with the additional limitation of avoiding concentrated exposure to chemicals. (R. 81.) The ALJ concluded that the "objective findings . . . fail to provide *strong* support for the claimant's allegations of disabling symptoms and limitations." (R. 82 (emphasis added).) As noted above, the ALJ's RFC discussion consists primarily of a recitation of three records: (1) Dr. Pilapil's 2006 assessment; (2) treating physician Dr. James' March 28, 2007 report; and (3) the May 31, 2006 report of consultant Dr. Rabinowitz. (R. 83.) The ALJ also noted Plaintiff's testimony about his ability to perform certain household duties, ride a bike, take out the trash and collect metal junk on garbage days until "he was once again arrested for driving on a suspended license." (*Id.*)

Contrary to SSR 96-8p, the ALJ provided little explanation as to how he weighed the evidence. Moreover, the decision does not demonstrate that the ALJ considered any of the medical evidence that contradicted his ruling. There is no indication that the ALJ considered Plaintiff's diagnosis of severe osteoarthritis or the report of Plaintiff's February 27, 2007 wrist x-rays which demonstrate conditions consistent with that diagnosis. While the ALJ need not discuss every piece of evidence in the record, he must not ignore entire lines of evidence that are contrary to his ruling.

*Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Villano*, 556 F.3d at 563.

The Commissioner argues that the ALJ considered and rejected Plaintiff's evidence of osteoarthritis, relying on the ALJ's mention of Dr. James' medical report which in turn includes a diagnosis of osteoarthritis. (Def.'s Mem. at 3-4.) The ALJ included that report in his recitation of the records but dismissed Dr. James' conclusions as "extreme and without *substantial* support from the other evidence of record." (R. 83 (emphasis added).) It is not clear what the ALJ meant by "without *substantial* support," just as it is not clear what he meant by saying that the objective findings fail to provide *strong* support for Plaintiff's claims of pain and disability. It appears that the ALJ dismissed all of Dr. James' conclusions because the ALJ believed that there was no support for Dr. James' limitations on Plaintiff's walking, standing or sitting. However, Dr. James' opinion that Plaintiff suffers from osteoarthritis is apparently consistent with the objective evidence provided by Plaintiff's x-rays. Even Dr. Pilapil opined, as Dr. James did, that Plaintiff is limited in pushing and pulling. (R. 319.)

The ALJ adopted Dr. Pilapil's conclusion that Plaintiff could perform "frequent" fingering and handling, but did not discuss the fact that Dr. Pilapil's 2006 assessment pre-dated (and therefore did not consider) Plaintiff's more recent medical records, including the x-rays done in 2007.

Plaintiff complains of wrist pain and unpredictability as to wrist and fingering performance following a history of wrist problems and surgeries. A diagnosis of severe osteoarthritis in the wrists paired with x-rays demonstrating among other things "significant degenerative change of the radial ulnar and radial carpal joint manifested by joint space narrowing" (R. 353), is relevant in evaluating Plaintiff's claimed wrists limitations. This is particularly so given that the only other medical opinions cited by the ALJ were prepared before the x-ray evidence was obtained. (R. 83.)

Even if Plaintiff's osteoarthritis by itself does not reach the level of "severe" (although Dr. James said it does), the ALJ should have considered it in conjunction with Plaintiff's other impairments to determine the combined impact of his health problems. *See Getch*, 539 F.3d at 480. The ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that in isolation, are not severe. *See* 20 C.F.R. § 404.1523. Indeed, an ALJ's failure to consider the cumulative effect of impairments not totally disabling in themselves may be "an elementary error." *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding error in ALJ's failure to consider effect of plaintiff's asthma and incontinence in exacerbating problems caused by plaintiff's chronic pain); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (finding error in ALJ's failure to consider aggregate effect of plaintiff's "entire constellation of ailments - including those impairments that in isolation are not severe").

In addition, the ALJ improperly supported his RFC determination with an inaccurate characterization of Plaintiff's testimony regarding his activities of daily living. In rejecting Plaintiff's claims about his limitations, the ALJ stated that the Plaintiff had "indicated that he does not have problems cleaning, making his bed or doing laundry." (R. 82.) He further reported that Plaintiff is able to mow the lawn, "though it does take him longer." (*Id*.) The ALJ's characterization of Plaintiff's testimony is not supported by the record. Although Plaintiff testified that he is able to perform certain household duties, he consistently testified that those activities must be modified based on his pain and wrist limitations, a factor unmentioned in the ALJ's decision. (R. 49-50.) For example, Plaintiff testified that he can wash dishes, but that he 'drop[s] them sometimes, too, because [his] grip is not always a firm grip." (R. 50.) He similarly testified that he can cook, but that he has to be "extra careful" because he never knows when his wrist might begin to ache or give

out entirely. (*Id.*) Whether the ALJ disbelieved Plaintiff's claimed modifications and if so, why, is unknown because the ALJ failed to provide an analysis.

Moreover, a person's ability to perform certain household chores (like cooking, cleaning and doing laundry) does not necessarily mean that the person is capable of engaging in substantial physical activity. *See, e.g., Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Zurawski*, 245 F.3d at 887. The ALJ improperly equated household work with work in the labor market. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005).

Likewise, the ALJ paraphrased Plaintiff's testimony about collecting "metal junk on garbage days *until recently* when he was once again arrested for driving with a suspended license." (R. 83 (emphasis added).) Plaintiff testified, however, that he last performed that work three years before the hearing, in 2005, and that he did not lift heavy objects and always had somebody working with him. (R. 23-25.) The ALJ should have explained why the actual record conflicted with Plaintiff's complaints of pain. *See Zurawski*, 245 F.3d at 887.

Plaintiff also argues that the ALJ did not discuss limitations imposed by his chronic dermatitis (Pl.'s Mem. at 10), which the ALJ found to be a severe impairment. (R. 80.) Perhaps that is accommodated by indicating that Plaintiff should avoid concentrated exposure to chemicals, but that is not clear. On remand, the ALJ must expressly consider each of Plaintiff's limitations and their combined impact in determining Plaintiff's RFC based on all of the evidence in the record.

## B.      Plaintiff's Credibility

Plaintiff additionally argues that the ALJ erred in concluding that Plaintiff's testimony was "not entirely credible." (Pl.'s Mem. at 13.)  He asserts that the ALJ did not comply with SSR 96-7p or otherwise build an accurate and logical bridge between the evidence presented and the conclusion as to credibility.  (*Id*.)  The Commissioner contends the ALJ's findings are not patently wrong and because the ALJ explained his ruling when he "expressly referred to lifting, grasping, and manipulation" in concluding that Plaintiff's allegations of disabling symptoms and limitations could not be accepted.  (Def.'s Mem. at 8 (citing R. 82-83).)

The relevant regulation provides:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186 at *2.  In determining a claimant's credibility, therefore, the ALJ must consider all of the evidence in the record and justify the findings with specific reasons.  *Craft,* 539 F.3d at 678.

In evaluating the claimant's complaints of pain or other symptoms, the ALJ must consider any objective medical evidence, the claimant's daily activities, level of pain or symptoms, precipitating and aggravating factors, medication, treatment or other measures used to alleviate pain and any other factors concerning limitations and restrictions due to pain or other symptoms.   20 C.F.R. § 404.1529(c).  As with other determinations, an ALJ need not discuss every piece of evidence, but he must build an accurate and logical bridge from the evidence to the conclusions.  *See,*

*e.g., Villano*, 556 F.3d 562; *Craft*, 539 F.3d at 673.

In this case, the ALJ's opinion states:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(R. 82.)  The Seventh Circuit recently criticized nearly identical language as "not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony." *Parker*, 597 F.3d at 921-922 (emphasis in original).[1]  The same must be said here.

Just as in the ALJ's opinion criticized in *Parker*, the ALJ's opinion here states (immediately after the above-quoted language) that the "objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (R. 82.)  That conclusion is followed by the discussion of the three medical reports and the RFC analysis described above, which, the Commissioner argues, reflects the ALJ's reasoned determination as to the negative credibility finding. (Def.'s Mem. at 7-9.) That argument is rejected.  A recitation of medical records in an RFC determination does not substitute for the reasoned analysis required under SSR 96-7p for a credibility determination.

Moreover, as described above, the ALJ's paraphrasing of Plaintiff's testimony is not an accurate recounting of the record.  The ALJ did not discuss the ways in which Plaintiff qualified his activities and did not explain why those statements were disregarded, or how the ALJ concluded that

---

[1] In *Parker*, the ALJ had used the same conclusory statement as to the claimant's credibility, differing only by the use of the word "would" instead of "could."  *Parker*, 597 F.3d at 920.

Plaintiff's activities were inconsistent with such complaints. In addition, the decision provides no insight as to what part of the Plaintiff's testimony the ALJ found credible and what part he did not.

The ALJ's opinion does not refer to any observations of Plaintiff's demeanor at the hearing. Although the ALJ is in the best position to determine the credibility of witnesses, a court has greater freedom to review the ALJ's decision in cases such as this one where the credibility finding is based on objective factors rather than subjective considerations. *See Craft*, 539 F.3d at 678. In this case, the ALJ's negative credibility finding was based on factors that are not supported by the record and is otherwise insufficiently defined. It does not fulfill the requirements of SSR 96-7p.

### C. Plaintiff's Treating Physician's Opinion

Plaintiff also complains that the ALJ did not give adequate weight to his treating physician Dr. James' opinion, arguing that Dr. James had more experience with Plaintiff and more laboratory reports available to him than the state agency physicians upon whose opinions the ALJ relied. (Pl.'s Mem. at 11-12; Pl.'s Reply at 3-5.) The Commissioner responds that the ALJ reasonably weighed the conflicting medical opinions and appropriately concluded that Dr. James' opinion as to Plaintiff's limitations was extreme and without substantial support in the record. (Def.'s Mem. at 5-7.)

The Regulations provide that the ALJ must "always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence [the agency] receive[s]." 20 C.F.R. § 404.1527(b). "A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is consistent with substantial evidence in the record.'" *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) (quoting 20 C.F.R. §

404.1527(d)(2)).  The Regulations further provide that unless the ALJ gives the treating physician's opinion controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency [physician or consultant], as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."  20 C.F.R. § 404.1527(f)(2)(ii).

In this case the ALJ rejected Dr. James' opinion outright as extreme and without substantial support in the record.  (R. 83.)  The ALJ noted that Dr. James opined that Plaintiff's ability to stand and walk was limited although there was no evidence in the record to support that limitation.  (*Id.*) From this the Commissioner argues that the ALJ therefore was reasonably skeptical of the entirety of Dr. James' opinion.  (Def.'s Mem. at 6.)  However, SSR 96-2P reminds that a single treating source may provide medical opinions on several issues and directs adjudicators to be aware that one or more of those opinions may be controlling while others may not.  SSR 96-2P, 1996 WL 374188 at *2.  The ALJ provided no discussion of the numerous opinions provided by Dr. James, and thus no insight as to the weight the ALJ afforded to them.

The ALJ found further that Dr. James' opinion "contrasts sharply with the other evidence of record."  (R. 83.)  The only other opinion evidence mentioned by the ALJ, however, are the opinions of the state agency physicians, one of which was prepared with no medical records whatsoever and one of which was prepared only upon a review of records but before Plaintiff had obtained x-ray imaging.  (R. 304-307, 318-325.)

The ALJ may choose to reject a treating physician's opinion in favor of conflicting evidence in the record, but in so doing the ALJ is required to consider specific factors such as the length, nature, and extent of the treatment relationship, frequency of examination, the physician's speciality,

the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527 (d)(2); *Moss*, 555 F.3d at 561. In this case, the ALJ failed to provide any consideration of the factors outlined in the Regulations.

## CONCLUSION

Plaintiff has requested that the Commissioner's determination be reversed outright, and that disability benefits be ordered. Although the ALJ's decision is deficient for the reasons set forth above, it is not clear that Plaintiff is entitled to the award of benefits he seeks. For all of the aforementioned reasons, therefore, Plaintiff's motion for summary judgment is granted. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Date: June 18, 2010

_____
Geraldine Soat Brown
United States Magistrate Judge